**STATE of Utah, Plaintiff and Appellee,**

v.

**Lana Marie GUTIERREZ, Defendant and Appellant.**

No. 930190–CA.

Court of Appeals of Utah.

Oct. 28, 1993.

---

Robert K. Heineman and Charles F. Loyd, Jr., Salt Lake City, for defendant and appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and GARFF,[1] JJ.

## OPINION

GREENWOOD, Judge:

Defendant appeals her conviction for homicide, in violation of Utah Code Ann. § 76–5–203 (Supp.1993), claiming that the trial court erred in admitting her confession into evidence because the interrogating officers elicited the incriminating statements in violation of her federal and state constitutional right to remain silent. Having determined that defendant's incrimina-

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3– 24(10) (1992).

ting statements followed an "arguably equivocal" invocation of this right, we reverse defendant's conviction and remand for a new trial. We reject the State's request that we remand for the limited purpose of receiving additional evidence on defendant's motion to suppress her confession.

## BACKGROUND

On April 25, 1992, at 2:28 in the morning, defendant was apprehended in Farmington for driving under the influence of alcohol. When the police officers took her into custody, they impounded the white Cadillac she had been driving which, they later discovered, belonged to Joseph Shivers (the victim).

Later that morning, a neighbor of the victim telephoned the police to report his discovery of the victim's body on the bathroom floor of the victim's trailer home. Detectives Romero and Potter, who investigated the scene, discovered that the victim's automobile had been impounded and that defendant, who had been arrested while driving the car, remained in custody in the Davis County Jail.

At about 8:00 p.m. that evening, the two detectives went to the jail and interrogated defendant. After informing defendant of her *Miranda* rights, the detectives asked her if she understood those rights. Defendant answered, "Yes, I do." Detective Potter then asked her if she were willing to talk to them without consulting an attorney or having an attorney present. Defendant responded, "Yes. Everything's cool."

During the interrogation, defendant denied having an altercation with the victim and claimed that the bloodstains found on the clothes she was wearing when arrested resulted from a self-induced, accidental scrape, not from any contact with the victim. When Detective Potter challenged the truthfulness of this statement, defendant repeatedly denied that she was lying and then retorted, "I ain't got to listen to you, okay." Detective Potter answered, "No, you don't."

Very shortly afterwards, the following colloquy occurred:

Romero: Yeah, but you went in the house with him.

Defendant: Yeah, I went in the house with him. Does it mean that I did anything to him?

Romero: Well, yeah, it does.

Defendant: Oh, shit, no it doesn't. Whatever. You guys think what you want to think, okay?

Romero: Well ... we know what happened. If you want to tell us what happened and ... get this thing....

Defendant: You think what you want to think. I ain't got to say nothin'.

Potter: You don't have to.

Defendant: That's right. I ... and do you know what? You think what you want to think.

Romero: Well ... we know and ya know, you're not helping yourself is what we're sayin. If you want to help yourself ... great. Ya know.

Potter: Maybe ... maybe you were defending yourself. We don't know. That's why we're here to talk to ya. We know you got in a fight with [the victim]. But we don't know why. Ya know, maybe he went after you. Maybe you just had to protect yourself and that's how he got hurt. We don't know. You ... we're just here to ask you. You tell us what happened.

Romero: You know, maybe he was violent and pushing you around. We don't know what happened.

Defendant: Well, okay ... I did it. But, he started hittin' me and shit, so I hit him back.

Defendant claimed that the two above underlined remarks invoked her right to remain silent. Accordingly, she filed a motion to suppress the incriminating statements which followed. The trial court denied defendant's motion and permitted the State to introduce testimony concerning the interrogation at defendant's trial.

After the jury rendered a guilty verdict, the trial court sentenced defendant to an

indeterminate term of five years to life, and ordered her to pay a fine and restitution. This appeal followed.

## ANALYSIS

### The *Miranda* Issue

■ Defendant seeks a new trial, claiming that the police officers questioning her failed to honor her invocation of the right to remain silent as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2] She argues that the officers either failed to cease questioning in response to two express invocations of her constitutional right to remain silent, or did not limit questioning to the clarification of her remarks after she equivocally invoked the right to remain silent. In developing this argument, she claims that: (1) *Miranda* protection applies because she uttered the incriminating statements during a custodial interrogation;[3] (2) she invoked the right to remain silent through language reasonably expected to be understood as invoking the privilege; (3) her statements required the officers to terminate their interrogation; and (4) this violation of her constitutional rights requires the reversal of her conviction and a new trial because, under the state constitution, the error should never be considered harmless.[4]

**2.** Defendant also claims prosecutorial misconduct requiring the reversal of her conviction, based on a misstatement by the prosecutor during closing argument. Because we find that the fifth amendment question is determinative, we need not address the question of whether the prosecutor's misstatement was harmless.

**3.** The State does not contest defendant's assertion that she made the incriminating statements during a custodial interrogation as described in *Mathis v. United States*, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968). We agree that the questioning of defendant constituted "interrogation," defined as actions or words by a police officer which the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (footnotes omitted).

**4.** In arguing that violation of her state constitutional rights requires the reversal of her conviction and a new trial, defendant asks this court to reject the "harmless error analysis" which the

■ Our review of the *Miranda* issue is non-deferential because this court stands in the same position as the trial court in reviewing the transcript of an interrogation. When a trial court bases its "ultimate conclusions concerning the waiver of defendant's *Miranda* rights, ... upon essentially undisputed facts, in particular the transcript of [an officer's] colloquy with defendant," its conclusions present questions of law which we review under a correction of error standard. *State v. Sampson*, 808 P.2d 1100, 1103 (Utah App.1990), *cert. denied*, 817 P.2d 327 (Utah 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992).

■ In *Miranda*, the Supreme Court required law enforcement officers conducting custodial interrogations to give specific warnings prior to questioning suspects and to follow specific procedures after giving these warnings. Although the *Miranda* warning is not constitutionally mandated, the Supreme Court required it as a prophylactic measure to preserve a criminal suspect's ongoing constitutional privilege against compulsory self-incrimination.[5] *Moran v. Burbine*, 475 U.S. 412, 424–25, 106 S.Ct. 1135, 1142–43, 89 L.Ed.2d 410 (1986) (citations omitted). Furthermore, an

Supreme Court adopted for fifth amendment analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 1253–54, 113 L.Ed.2d 302 (1991). The State chose to concede that the erroneous admission of defendant's statements cannot be deemed a harmless violation of *Miranda* because if defendant adequately invoked her right to remain silent, then she is entitled to a new trial at which statements to the police subsequent to her request must be suppressed. *Cf. State v. Sampson*, 808 P.2d 1100, 1109 (Utah App.1990), *cert. denied*, 817 P.2d 327 (Utah 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992) (declaring that violations of right to counsel cannot be considered harmless error). Because we find that, if the trial court erred in admitting defendant's confession, this error could not be construed as harmless, we need not determine whether our state constitution provides greater protection than the federal constitution for a defendant claiming violation of the right to remain silent.

**5.** Both the Fifth Amendment to the United States Constitution and article I, § 12 of the Utah Constitution specifically protect this right.

effective initial waiver of the right to remain silent does not nullify a suspect's ability to subsequently invoke this right during the course of an interrogation. *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). Therefore, if we find that, in spite of an effective initial waiver of her *Miranda* rights, defendant made, and the officers failed to honor, a subsequent request to terminate questioning, we must suppress her subsequent statements as "the product of compulsion, subtle or otherwise." *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628.

The trial court correctly noted that the right to remain silent and the right to be represented by counsel constitute separate elements of a criminal suspect's protection against coercive self-incrimination. The Supreme Court addressed the significance of this distinction in decisions following *Miranda*, which focused on a suspect's ability to *waive* a prior *invocation* of *Miranda* rights. In these cases, the Supreme Court, recognizing a distinction between the specific concerns that each *Miranda* right addressed, established separate requirements for resuming interrogation depending upon which right was waived. If a suspect invoked the right to the presence of counsel, a presumption arose that the suspect had indicated an unwillingness to proceed without an attorney present. *Arizona v. Roberson*, 486 U.S. 675, 683, 108 S.Ct. 2093, 2099, 100 L.Ed.2d 704 (1988). Questioning could not resume outside the presence of counsel unless a suspect not only knowingly and intelligently waived the right to the presence of counsel, but also personally initiated further discussion with the police. *Id.* at 680–81, 108 S.Ct. at 2097 (discussing *Edwards v. Arizona*, 451 U.S. 477, 485–86 & n. 9, 101 S.Ct. 1880, 1885 & n. 9, 68 L.Ed.2d 378 (1981)); *Moran*, 475 U.S. at 423 n. 1, 106 S.Ct. at 1141 n. 1. On the other hand, "a suspect's decision to cut off questioning, unlike his request for counsel, does not raise the presumption that he is unable to proceed without a lawyer's advice." *Roberson*, 486 U.S. at 683, 108 S.Ct. at 2099. Instead, the invocation of the right to remain silent requires termination of questioning to "prevent[ ]

police from 'persisting in repeated efforts to wear down [the accused's] resistance and make him change his mind.'" *Smith v. Illinois*, 469 U.S. 91, 95 n. 2, 105 S.Ct. 490, 492 n. 2, 83 L.Ed.2d 488 (1984) (quoting *Mosley*, 423 U.S. at 105–06, 96 S.Ct. at 327). However, even when a suspect invokes the right to remain silent, officers who initially honored that request by terminating the interrogation could resume questioning under some circumstances, including the passage of some significant period of time. *Mosley*, 423 U.S. at 104–06, 96 S.Ct. at 327 (noting that officers "fully respected" suspect's right to cut off questioning when second officer interrogated suspect about separate crime after waiting more than two hours to resume questioning and providing fresh set of warnings).

The *Miranda* decision, however, established identical standards for the invocation of either *Miranda* right. The *Miranda* Court recognized a suspect's desire to consult with an attorney expressed *"in any manner* and at any stage of the process," *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612 (emphasis added), and employed this exact same language in describing the adequacy of an invocation of the right to remain silent. *Id.* at 473–74, 86 S.Ct. at 1627 (allowing suspect to invoke right to remain silent *"in any manner*, at any time prior to or during questioning") (emphasis added). The Court then required interrogating officers faced with an invocation of either right to respond by terminating their questioning. *Id.* at 444–45, 473–74, 86 S.Ct. at 1612, 1627.

 The *Smith* decision later pointed out that the broad construction of the invocation of *Miranda* rights made it inevitable that "[o]n occasion, an accused's asserted request for counsel may be ambiguous or equivocal." *Smith*, 469 U.S. at 95, 105 S.Ct. at 493; *see also Sampson*, 808 P.2d at 1108 (pointing out that equivocal request for counsel should "still qualify as an invocation of *Miranda* rights"). *Miranda*'s allowance of an invocation of the right to remain silent "in any manner" arguably

encompasses both equivocal and unequivocal requests.[6]

In the present case, the trial court determined that because defendant's statements did not constitute either an unequivocal or equivocal invocation of the right to remain silent, the officers' continuation of their interrogation did not infringe on her right to be free from unfair or coercive custodial interrogation. Although we agree with the trial court that neither statement unequivocally invoked defendant's right to remain silent, we believe that defendant's statement, "I ain't got to say nothin," presents an issue concerning whether defendant equivocally invoked that right.

In concluding that defendant did not equivocally invoke her right to remain silent, the trial court distinguished defendant's case from *Sampson,* which defendant argued by analogy required the interrogating officers to clarify her remarks. *See Sampson,* 808 P.2d at 1108–12 (requiring clarification after suspect said, "Well, ah, should I have a lawyer, I mean, well, I'm really not worried about anything, it is just that ...."). Because we find no adequate legal foundation for this distinction, and, in fact, find the reasoning of *Sampson* applicable to this case, we hold that the standards in the *Sampson* decision for analyzing an equivocal invocation of the right to counsel should control the analysis of an alleged invocation of the right to remain silent.

We conclude that precedent discussing equivocal invocations of the right to counsel is relevant to cases alleging equivocal invocations of the right to remain silent for the following reasons: (1) there is no relevant distinction between the right to remain silent and the right to the presence of counsel in analyzing the invocation of either right; (2) the initial response required of interrogating officers faced with the unequivocal invocation of either right is identical; and (3) a legally effective invocation of either right can include some measure of ambiguity or equivocality. The *Sampson* decision and other caselaw are, therefore, relevant in evaluating alleged invocation of *Miranda* rights and in setting the corresponding limitations on law enforcement officials.

The particular relevance of the *Sampson* decision arises out of the United States Supreme Court's recognition that courts use several approaches to problems associated with equivocal invocation of *Miranda* rights. *Smith,* 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3. In evaluating an equivocal request for counsel, the Court recognized three different approaches to the equivocal invocation dilemma. One approach requires law enforcement to cease questioning after even the most ambiguous or equivocal reference to counsel. *Id.* A second view defines a threshold standard for clarity below which ambiguous statements will not be considered as invocations of the right to counsel. *Id.* A third approach is that "an equivocal statement that 'arguably' can be construed as a request for counsel requires interrogation to cease except for the narrow purpose of clarifying the earlier statement." *Id.*

This court, in a precursor to *Sampson,* adopted the third approach. *State v. Griffin,* 754 P.2d 965, 969 (Utah App.1988) (followed in *State v. Christofferson,* 793 P.2d 944, 947 (Utah App.1990)). The *Sampson* court described this approach as "preferable to either of the two more extreme positions." *Sampson,* 808 P.2d at 1109. It noted that the majority of other jurisdictions had adopted this position[7] and that

---

**6.** As an earlier Supreme Court decision directed, instead of requiring a "ritualistic formula or talismanic phrase" to invoke the privilege against self-incrimination, a suspect need only object to the continuation of questioning in language that an interrogator could reasonably be expected to understand as attempting to invoke the privilege. *Emspak v. United States,* 349 U.S. 190, 194, 75 S.Ct. 687, 690, 99 L.Ed. 997 (1955).

**7.** For example, state appellate courts have lauded the Fifth Circuit's adoption of this pragmatic approach because it "occupies a sensible middle ground between, on one hand, giving 'talismanic effect' to any vague mention of an attorney and, on the other hand, insisting that accused persons in custody invoke their rights in language free from all possible ambiguity." *State v. Moulds,* 105 Idaho 880, 888, 673 P.2d 1074,

commentators considered the approach the best balance between "the interests of law enforcement and the rights of the accused." *Id.* at 1109.

▇▇ Because we find these same concerns appropriate when analyzing an alleged invocation of the right to remain silent, we hold that the clarification approach adopted by Utah courts for evaluating equivocal invocation of the right to counsel applies equally in the context of equivocal invocation of the right to remain silent. Under this clarification approach, "two inquiries are required: first, whether an accused 'actually invoked' [a *Miranda* right], and second, if so, whether that request was scrupulously honored" through clarification efforts. *People v. Benjamin*, 732 P.2d 1167, 1170 (Colo.1987) (quoting *Smith*, 469 U.S. at 95, 105 S.Ct. at 493)). Therefore, if we find defendant's remarks "arguably equivocal," the law enforcement officers' obvious failure to seek clarification will require us to suppress any subsequent incriminating statements.

Arguably Equivocal Invocation

▇▇ The trial court ruled that neither of defendant's remarks allegedly requesting the termination of questioning equivocally invoked her right to remain silent. The trial court decided that defendant's remarks and the officers' responses demonstrated their clear awareness of defendant's right to remain silent rather than any attempt to exercise that right. The trial court found no evidence of coercion in the dialogue and considered it significant that defendant apparently made no effort to get up and leave the interrogation room. The trial court also observed that the officers took defendant's rights into account before proceeding with questioning.

▇▇ Upon review of the trial court's reasons for admitting defendant's confession, we conclude that the trial court used the "threshold standard for clarity" approach rather than Utah's "arguably equivocal" standard. Jurisdictions adopting the threshold method of evaluation have found

relevance in a lack of coercion in the interrogation, the officers' good faith subjective beliefs that the defendant's remark was not a *Miranda* request, and the officers' exercise of personal judgment in assessing a suspect's statements. *See People v. Krueger*, 82 Ill.2d 305, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 (1980) (determining that not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel").

▇▇ The *Sampson* decision, on the other hand, elected to avoid having officers make an on-the-spot determination of whether a particular statement met some threshold standard of clarity in favor of allowing suspects to clarify their remarks themselves. "Arguably equivocal" invocations of *Miranda* rights require an officer to ask suspects being questioned whether they wish to avail themselves of a *Miranda* right or whether they want to continue to answer questions. *See Sampson*, 808 P.2d at 1111 & n. 18 (citing with approval *State v. Griffin*, 754 P.2d 965, 966–67 (Utah App. 1988), in which interrogating officer immediately responded to equivocal request for counsel by asking, "OK, are you saying you don't want to talk anymore?").

After considering the actual standard indicated by the combination of the two words "arguably equivocal," looking at the policy expressed by courts adopting the clarification approach, and examining defendant's remark in context, we are persuaded that defendant's comment, "I ain't got to say nothin," was an "arguably equivocal" invocation of her right to remain silent rather than a mere acknowledgment of her right or expression of awareness that she could elect to exercise that right.

▇▇ In interpreting the meaning of this phrase we consider the effect of each term and construe the words according to their ordinary and accepted meaning. *See Versluis v. Guaranty Nat. Cos.*, 842 P.2d 865, 867 (Utah 1992) (using this same construction principle for statutory interpretation).

1082 (App.1983); *see also People v. Benjamin,*

732 P.2d 1167, 1171 (Colo.1987).

According to *Black's Law Dictionary*, "equivocal" means, "Having a double or several meanings or senses. Synonymous with 'ambiguous'." *Black's Law Dictionary* 542 (6th Ed.1990). "Arguably" is the adverbial form of "arguable" which means "capable of being argued: open to argument, dispute, or question." *Webster's Third New International Dictionary* 116 (1986). Thus, modifying "equivocal" with "arguably" indicates that defendant need only show that it is open to argument that one of the meanings of her statement was a desire to terminate questioning.

We note also that other jurisdictions track the reasoning of *Sampson*. For example, the Arizona Supreme Court found that clarification of any assertion susceptible to more than one interpretation was "consistent with the United States Supreme Court's mandate that the person in custody's 'right to cut off questioning' must be 'scrupulously honored.'" *State v. Finehout*, 665 P.2d 570, 573 (Ariz.1983) (noting that state acknowledged ambiguity in suspect's assertion, "I ain't going to say no more."). Also, the Colorado Supreme Court described any statement or conduct providing leeway for opposing inferences as "precisely the type of ambiguous communication" requiring clarification of the suspect's wishes. *People v. Benjamin*, 732 P.2d 1167, 1171 (Colo.1987) (finding that suspect's completion of indigency form for purpose of qualifying for court-appointed counsel required clarification to determine if it was request for counsel). Additionally, an Alaska opinion described the clarification approach as protecting less assertive or inarticulate suspects who exercise their *Miranda* rights in a tentative manner. *Hampel v. State*, 706 P.2d 1173, 1180, 1182 (Alaska App.1985) (finding statement adequate to require clarification when it only indicated possibility of desire to invoke *Miranda* right).

Based on the foregoing, we conclude that defendant's remark, "I ain't got to say nothin," sufficiently expressed a desire to terminate questioning. This remark was the second time in a matter of moments that defendant referred to her right to terminate questioning, however obliquely. Furthermore, the transcript lends credibility to defendant's argument that after this remark she became unresponsive and only made further statements after the officers lured her back into the conversation by resorting to a recognized tactic intended to extract an incriminating response. Immediately after her remark, the officers acknowledged her right to remain silent and then engaged in a conversation with each other suggesting that she may have been acting in self-defense. The *Miranda* Court recognized this technique of offering a suspect a legal excuse for actions "in order to obtain an initial admission of guilt." *Miranda*, 384 U.S. at 451, 86 S.Ct. at 1616. Officer Potter candidly admitted to using the tactic because he felt defendant was not telling the truth about her involvement in the incident. Resorting to this tactic also suggests the officers' awareness of defendant's reluctance to discuss the matter with them any further.

■ We are likewise unpersuaded by the trial court's observation that defendant apparently did not attempt to leave the room after her remarks. Suspects undergoing custodial interrogation could reasonably assume that even the right to terminate questioning does not afford them the option of leaving the interrogation room.

■ Because defendant's remark, "I ain't got to say nothin," constituted an "arguably equivocal" invocation of her right to terminate questioning, the officers interrogating her were required to clarify this statement. The transcript of the interrogation shows that the officers instead responded, "You don't have to," and then continued their interrogation. Although this response indicates an acknowledgement of a right to remain silent, it did not serve to clarify defendant's intent in making this remark. *See Sampson*, 808 P.2d at 1110 (discussing *State v. Moulds*, 105 Idaho 880, 673 P.2d 1074, 1083 (App.1983)). As a result, defendant's ensuing confession was obtained in violation of her fifth amendment rights and the trial court erred in allowing its admission into evidence.

### Request for Remand

■ After assessing defendant's claim, the State isolated the question of whether defendant's statements constituted either an express or equivocal invocation of the right to remain silent as the critical issue before this court. However, the State chose not to respond substantively to defendant's claim that she invoked this right. Instead, it argued that the record fails to provide this court sufficient evidence by which to resolve this issue and recommends a remand to the trial court for a further evidentiary hearing. On remand, the State suggests that the trial court should listen to the audio tapes of the custodial interrogation and consider testimony of the officers and defendant regarding their interpretations of the statements at issue.

The State makes its request for a remand for another evidentiary hearing despite the fact that the trial court evidently considered the original presentation of evidence adequate when it ultimately ruled in favor of the State, and defendant did not contest the adequacy of the evidence during the hearing or in its opening appellate brief.

In her reply brief, defendant counters the State's proposition that this court can or should remand. She argues that the cases cited by the State to support its recommendation are not on point and claims that providing the State such leeway would allow the State to circumvent its responsibility to have presented all relevant evidence on this particular matter to the trial court in a timely manner.[8]

We agree with defendant that the precedent cited by the State does not support the proposition that this court can remand this case for another evidentiary hearing at which additional evidence could be presented. In *Willett v. Barnes*, 842 P.2d 860, 863 (Utah 1992), the supreme court authorized a limited remand because it lacked a complete copy of the preliminary hearing transcript, not for the purpose of allowing the presentation of new evidence. In *State v. Strain*, 779 P.2d 221, 227 (Utah 1989), the supreme court remanded the case only because the trial court had not yet addressed the determinative issue. In contrast to *Willett* and *Strain*, the trial court in this case directly ruled on the suppression issue, basing its ruling on all the evidence the State elected to submit, and this court has a complete transcript of the evidence submitted and the hearing at which that evidence was considered.[9]

■ Having concluded that remanding this case would give the State an unprecedented opportunity to bolster or modify the prosecution's original argument, taking advantage of a retrospective critique by the State, we find no legal basis for the remand requested by the State.[10] Furthermore, remand as requested by the State would not be sound judicial policy, as it would permit successive attempts to introduce evidence overlooked in prior hearings, thus preventing final conclusion of these proceedings. Therefore, we conclude that the State's request for a remand of this case is both legally and factually untenable.

### CONCLUSION

During defendant's custodial interrogation, she made a remark which constituted an "arguably equivocal" invocation of her right to remain silent. Because the interrogating officers did not then limit questioning to clarification of this ambiguous re-

---

8. Defendant also claims that the State's proposition is based on pure speculation, unsupported by any affidavit explaining what persuasive evidence the trial court might glean from hearing the additional material on remand.

9. Additionally, this court has previously decided a suppression issue involving an equivocal request for counsel based on a transcript alone, specifically noting that the actual tape was not part of the record. *Sampson,* 808 P.2d at 1110.

10. Indeed, a review of the transcript of the evidentiary hearing clearly shows that the trial court afforded the State ample opportunity to present both witnesses and evidence relevant to the admissibility issue. The transcript indicates that the State, in fact, stipulated to the accuracy of the interrogation transcript upon which the trial court based its decision.

mark, the incriminating statements they later elicited from her were extracted in violation of the Fifth Amendment of the United States Constitution and article I, section 12 of the Utah Constitution. In this case, the erroneous admission of defendant's incriminating statements constituted harmful error requiring a reversal of defendant's conviction and a new trial in which the incriminating statements must be suppressed. Additionally, a remand for the limited purpose of allowing new evidence regarding the admissibility of defendant's statements is contrary to law and sound judicial policy. We accordingly reverse and remand for a new trial.

BILLINGS and GARFF, JJ., concur.