2011 UT 40

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Vance MORRIS, Defendant and Respondent.**

No. 20090835.

Supreme Court of Utah.

July 22, 2011.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, Walter J. Bird, Monticello, for plaintiff.

Ronald J. Yengich, Elizabeth Hunt, Salt Lake City, for defendant.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal concerns the constitutionality of a police officer's actions during a traffic stop. Specifically, we consider what an officer must do when he stops a driver based on an objectively reasonable belief that a traffic violation has occurred, but before approaching the driver the officer learns he was mistaken about the grounds for the stop. We hold that when an officer acting in good faith is reasonably mistaken about the grounds for a traffic stop, he may initiate contact with the driver to explain his mistake and to end the stop, but may not detain the driver any further. If during this brief encounter new reasonable suspicion of criminal activity arises, the officer may respond accordingly.

## BACKGROUND

¶ 2 On the night of June 12, 2007, Vance Morris was driving a black Mazda on a two-lane highway in San Juan County, Utah. Some distance behind Mr. Morris, Highway Patrol Trooper Travis Williams was also traveling on the highway.

¶ 3 As Trooper Williams approached Mr. Morris's car, he noticed the car bumping the white fog line on the side of the road. Suspecting that the driver may be impaired, Trooper Williams began to record the driving pattern from his dashboard video camera.

¶ 4 A few minutes later, Trooper Williams noticed that the Mazda did not have a visible license plate. At this point, Trooper Williams decided it was necessary to make a traffic stop. But as Mr. Morris pulled to the side of the road, Trooper Williams realized that he was mistaken. Although Mr. Morris did not have a current license plate, Trooper Williams's spotlight illuminated a valid temporary registration tag clearly displayed in the Mazda's rear window.

¶ 5 In spite of observing a valid temporary tag, Trooper Williams stepped out of his car and approached Mr. Morris's vehicle. When Mr. Morris rolled down his window, Trooper Williams noticed Mr. Morris was smoking a freshly lit cigar. As Mr. Morris spoke, Trooper Williams smelled, through the cigar smoke, the odor of an alcoholic beverage.[1]

---

1. At the preliminary hearing, Trooper Williams testified that as soon as Mr. Morris rolled down his window he could smell the odor of alcohol. Trooper Williams testified that at this point, he asked Mr. Morris if he had been drinking and, when Mr. Morris said no, Trooper Williams asked him to step out of the vehicle. At oral argument, Mr. Morris disagreed with this narrative and asked us to independently review the video recording that was submitted to ascertain whether this description of the events was accurate. Typically, in situations where a recording is included in the record, we may give less deference to the trial court's factual findings because we "stand[ ] in the same position as the trial court in reviewing [the recording]." *State v.*

¶ 6 Mr. Morris volunteered to provide his license and registration and asked the officer if he also needed his insurance information. Trooper Williams responded affirmatively. At this point, Trooper Williams walked toward his patrol car to examine the documents. He then returned to Mr. Morris's car and asked him to exit his vehicle. Trooper Williams administered field sobriety tests and ultimately determined that Mr. Morris was driving under the influence of alcohol.

¶ 7 Another officer arrived on the scene. Trooper Williams arrested Mr. Morris and transported him to the county jail. The other officer conducted an inventory search of the vehicle and discovered drugs and drug paraphernalia. Mr. Morris was formally charged with possession of a controlled substance with intent to distribute, driving under the influence of alcohol or drugs, possession of drug paraphernalia, and driving with an open container of alcohol.

¶ 8 Mr. Morris filed a motion to suppress the evidence collected from the search. Mr. Morris argued that when the officer spotted the temporary registration tag in the window, his reasonable suspicion dissipated and any further detention of Mr. Morris violated his Fourth Amendment rights. The district court denied Mr. Morris's motion. Although the district court noted, "it [was] debatable whether Mr. Morris's driving pattern justifie[d] a traffic stop," it concluded that "[Trooper] Williams was justified in stopping the vehicle because the plate was not visible to him until after he signaled [Mr.] Morris to stop." The district court reasoned that once Trooper Williams initiated the stop, "it was reasonable for him to contact the driver, explain the [mistaken] basis for the stop, and then release the driver." Once the "brief contact generated reasonable suspicion of

criminal activity, further detention was justified."

¶ 9 The court of appeals reversed the district court's decision. First, the court of appeals concluded that the driving pattern clearly did not justify the stop. Second, the court of appeals concluded that once Trooper Williams spotted Mr. Morris's valid temporary registration tag, the Trooper lost the reasonable suspicion that justified the traffic stop and any contact or further detention of Mr. Morris was unreasonable. Although the court of appeals recognized its holding may result in potential "motorist confusion," it found that neither "individual bewilderment" nor "police politeness" were a "significant enough concern to 'outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected,' including the right to be free from unwarranted police detention, no matter how brief." [2]

¶ 10 The State filed a petition for certiorari on this issue, and we granted it. We have jurisdiction over this appeal under Utah Code section 78A–3–102(5) (Supp.2010).

## STANDARD OF REVIEW

¶ 11 ■ "On certiorari, we review the court of appeals' decision for correctness," giving no deference to its conclusions of law.[3] When a district court denies a defendant's motion to suppress, we "disturb[ ] the district court's findings of fact only when they are clearly erroneous." [4]

## ANALYSIS

¶ 12 The question on certiorari is whether the court of appeals erred when it reversed the district court's denial of Mr. Morris's motion to suppress. Mr. Morris urges us to

---

*Gutierrez*, 864 P.2d 894, 898 (Utah Ct.App.1993). Although the parties in this case submitted to us a video recording of the traffic stop, segments of the conversation between Trooper Williams and Mr. Morris are inaudible, and it is unclear from our review if the exchange between Trooper Williams and Mr. Morris occurred in the same sequence and manner in which it was described at the preliminary hearing. Although we have concerns about the testimony at the preliminary hearing, because it is impossible from our review of the video to firmly conclude that the exchange

was inaccurately described, we must defer to the district court's factual findings on this issue.

**2.** *See Morris*, 2009 UT App 181, ¶ 11, 214 P.3d 883 (quoting *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 1723, 173 L.Ed.2d 485 (2009)).

**3.** *Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 14, 233 P.3d 489 (internal quotation marks omitted).

**4.** *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

affirm the decision of the court of appeals. According to Mr. Morris, the court of appeals correctly concluded that the traffic stop violated his Fourth Amendment rights because it involved "an investigatory detention that was lacking in reasonable suspicion from the outset," and that even if the initial contact between Trooper Williams and Mr. Morris was justified, it "exceeded a simple explanation of the lack of a legal basis for the detention." In other words, Mr. Morris contends that Trooper Williams had no lawful basis to approach Mr. Morris and that his decision to do so was both unreasonable and unconstitutional. Mr. Morris further argues that even if it was reasonable for the officer to explain his mistake, the stop still violated the Fourth Amendment because the officer detained Mr. Morris longer than necessary, collected his identification and registration, and conducted field sobriety tests.

¶ 13 Although the State concedes that Trooper Williams's reasonable suspicion was dispelled before he made contact with Mr. Morris, the State argues that it was reasonable for the officer to interact with the driver to explain his mistake. The State also contends that Trooper Williams regained reasonable suspicion of criminal activity when he made contact with Mr. Morris and detected a "whiff" of alcohol emanating from the car. The State argues that these new circumstances allowed the Trooper to continue the detention to investigate further.

¶ 14 We conclude that the State is correct and therefore reverse the decision of the court of appeals. Although we appreciate the court of appeals' effort to vigilantly protect the constitutional rights of our citizens, we also conclude that the court of appeals misapplied the Fourth Amendment's command that searches and seizures be reasonable. As we discuss in more detail below, we first conclude that Trooper Williams's stop was justified at its inception. Next, we conclude that, in light of the factual circumstances that followed, Trooper Williams's further detention of Mr. Morris was also a reasonable seizure under the Fourth Amendment.

## I. TROOPER WILLIAMS'S TRAFFIC STOP AND FURTHER DETENTION OF MR. MORRIS WAS A REASONABLE SEIZURE UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

¶ 15 ▮▮▮ The Fourth Amendment to the United States Constitution protects our citizens from "unreasonable searches and seizures." [5] Motor vehicle stops constitute "seizures" under the Fourth Amendment and thus must be reasonable in scope to be upheld.[6] To be reasonable, a traffic stop must be "justified at its inception" and "reasonably related in scope to the circumstances that justified the interference in the first place." [7] During a lawful traffic stop, " '[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.' " [8] "[W]ithout additional reasonable suspicion, the officer must

---

5. U.S. CONST. amend. IV.

6. *See State v. Roybal*, 2010 UT 34, ¶ 14, 232 P.3d 1016.

7. *State v. Baker*, 2010 UT 18, ¶ 12, 229 P.3d 650 (internal quotation marks omitted); *State v. Applegate*, 2008 UT 63, ¶¶ 8–9, 194 P.3d 925 ("To determine whether a [traffic] stop is reasonable, we apply a two-part test. The first step is to determine whether the police officer's action [was] justified at its inception. Under the second step, we must determine whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." (second alteration in original) (citations and internal quotation marks omitted)); *see also Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."); *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994) ("To determine the reasonableness of [a traffic stop], we employ a dual inquiry: [1] whether the officer's action was justified at its inception, and [2] whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." (second, third, and fourth alterations in original) (internal quotation marks omitted)).

8. *Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650 (alteration in original) (quoting *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009)).

allow the seized person to depart once the purpose of the stop has concluded." [9] But if "during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion." [10] We conclude that Trooper Williams's traffic stop was both justified at its inception and reasonably related in scope to the circumstances that justified the stop in the first place.

### A. Trooper Williams's Traffic Stop Was Justified at Its Inception Because the Stop Was Initiated Based on Objective Reasonable Suspicion That a Traffic Violation Had Occurred

¶ 16 ▮ Under the Fourth Amendment, a police officer may stop a vehicle only if the officer has a particularized and objective basis for suspecting the driver or a passenger is engaged in criminal activity.[11] Although to be lawful, reasonable suspicion must be based on " 'specific and articulable facts and rational inferences,' " [12] "[a] police officer need not actually observe a violation" to make a stop.[13] "Instead, 'as long as an officer *suspects* that the driver is violating any one of the multitude of applicable traffic . . . regulations, the police officer may legally stop the vehicle.' " [14] The fact that an officer mistakenly relies on objective facts that upon closer review suggest that the stop would not be justified will not automatically render the subsequent search unconstitutional. Indeed, "[a] factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop." [15] In our examination of each individual stop, the touchstone of our analysis is not whether the officer was correct, but whether his actions were reasonable.[16]

¶ 17 We conclude that Trooper Williams's initial traffic stop was reasonable. As part of our review on appeal, we closely examined a recording of the traffic stop submitted by the parties. The recording shows a car with dark windows traveling at night. It is difficult to see much detail on the car and nothing is visible in the rear window. No license plate is visible on the vehicle. As the car comes to a stop, the video shows the Trooper shining his spotlight on the car, and a temporary registration tag in the corner of the rear window comes into clear view. The State concedes that at this point, Trooper Williams's reasonable suspicion for the stop dissipated. Although we agree that the Trooper lost reasonable suspicion to detain Mr. Morris when he saw the temporary registration tag, we conclude that this fact does not make his *initial* decision to stop Mr. Morris unreasonable. At the time of the stop, Trooper Williams had an objectively reasonable basis to believe the vehicle did not have a current license plate and that this traffic violation justified a stop. Thus, the traffic stop was "justified at its inception," and we must now examine the trooper's actions from this point forward to determine

---

9. *Id.*

10. *Id.*

11. *See State v. Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507; see also *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000) ("Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." (internal quotation marks omitted)).

12. *Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507 (quoting *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir.1990)).

13. *Applegate*, 2008 UT 63, ¶ 10, 194 P.3d 925.

14. *Id.* (emphasis added) (alteration in original) (quoting *State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994)).

15. *Twilley*, 222 F.3d at 1096 n. 1; *see also United States v. Jenkins*, 452 F.3d 207, 212 (2nd Cir. 2006), *cert. denied*, 549 U.S. 1008, 127 S.Ct. 528, 166 L.Ed.2d 392 (2006) ("The constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts.").

16. *See Kentucky v. King*, —— U.S. ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) ("[T]he ultimate touchstone of the Fourth Amendment is reasonableness." (internal quotation marks omitted)); *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness[.]").

whether Mr. Morris's subsequent detention was reasonable.

### B. Trooper Williams's Further Detention of Mr. Morris Was Reasonable

¶ 18 ▮▮▮▮ Having concluded that the traffic stop was justified at its inception, we now examine the scope of the remainder of the detention. We have previously stated that "[o]nce a traffic stop is made, the detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'"[17] "Both the length and [the] scope of the detention must be strictly tied to and justified by the circumstances which rendered its initiation permissible."[18] If during the encounter, new reasonable suspicion of criminal activity arises, an officer may temporarily detain the driver. However, "the scope of the stop is still limited," and officers must "diligently [pursue] a means of investigation that [is] likely to confirm or dispel their suspicions quickly."[19]

¶ 19 The court of appeals concluded that Trooper Williams's detention of Mr. Morris exceeded a lawful scope. The court of appeals held that "a police detention is no longer justified *as soon as* the exception initially justifying the intrusion is absent."[20] Trooper Williams's original reasonable suspicion was related to the validity of the car's registration and this concern disappeared when the Trooper spotted Mr. Morris's temporary registration tag. The court of appeals reasoned that once reasonable suspicion was lost, any contact with the driver was unreasonable. Thus, the Trooper's approach, acceptance of Mr. Morris's identification, registration, and proof of insurance, along with his decision to question Mr. Morris " 'exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.'"[21]

¶ 20 Under the court of appeals' holding, if a police officer is objectively mistaken as to the facts forming the basis for reasonable articulable suspicion, the officer may not come into contact with the driver to explain his mistake. Instead, he must wave the car on or simply drive away without any further communication. Although the court of appeals recognized its holding could lead to "momentary motorist confusion" and "individual bewilderment," it reasoned that "promotion of police politeness" was not a "significant enough concern to outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected."[22]

¶ 21 While we agree that an individual's constitutional rights must be fully protected, we disagree with the court of appeals' conclusion that Mr. Morris's constitutional rights were violated during the traffic stop. Although we have examined the constitutional parameters of many traffic stops in the past, we have never squarely addressed the question of what an officer may lawfully do after discovering that the reason for his traffic stop was erroneous. For analytical clarity, we approach this issue by examining the Trooper's conduct in two stages. We first discuss the Trooper's decision to approach the driver to explain the mistaken grounds for his reasonable suspicion. We then consider the Trooper's actions after the explanation is offered. For the reasons explained below, we ultimately conclude that in both instances, the Trooper's conduct was constitutionally reasonable.

1. If an Officer Stops a Driver Based on an Objectively Reasonable but Ultimately Mistaken Suspicion of a Traffic Violation, the Officer May Approach the Driver to Explain His Mistake and to Communicate to the Driver That He Is Free to Go

¶ 22 Although we have never directly confronted the issue of what an officer must do

---

17. *Lopez*, 873 P.2d at 1132 (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

18. *Id.* (alteration in original) (internal quotation marks omitted).

19. *Id.* (alterations in original) (internal quotation marks omitted).

20. *State v. Morris*, 2009 UT App 181, ¶ 11, 214 P.3d 883.

21. *Id.* ¶ 13 (quoting *McSwain*, 29 F.3d at 561–62).

22. *Id.* ¶ 11 (internal quotation marks omitted).

when he loses reasonable suspicion that originally justified a traffic stop, several other jurisdictions have considered these circumstances.[23] Perhaps most factually analogous to this case is *United States v. Jenkins*,[24] a case decided by the United States Court of Appeals for the Second Circuit. In *Jenkins*, two police officers were patrolling an area at night when they observed an SUV without a front or rear license plate and what appeared to be illegally tinted windows.[25] The police officers stopped the SUV, but when the officers exited their vehicle, they noticed a valid temporary plate affixed to the rear of the car.[26] In spite of this observation, the officers approached the driver of the vehicle.[27] The driver rolled down the window and an odor of marijuana emanated from the car. One of the officers asked who was smoking marijuana, and the driver told the officer he was not smoking it.[28] The officers directed the occupants of the vehicle to exit the SUV.[29] At this point, one of the officers spotted a firearm in the front passenger seat area.[30] Another firearm was also recovered from the backseat.[31] Two of the occupants later admitted owning the firearms.[32] These individuals were arrested and each was subsequently charged with being a felon in possession of a firearm.[33] Both defendants filed a motion to suppress.[34]

¶ 23 The district court denied the motions to suppress.[35] It first concluded that although the vehicle had a valid temporary plate, because the plate "was hard to see and poorly illuminated, 'an objective police officer would have had a reasonable basis to believe there was a traffic violation' " that warranted a traffic stop.[36] The district court also found unpersuasive the defendants' argument that once the officers observed the temporary plate, they should have "waved the SUV on without further detaining the occupants."[37] The district court acknowledged that the officers' reasonable suspicion had dissipated when they saw the temporary plate but found it was nonetheless "reasonable for an objective police officer to speak to the driver to tell him he was free to go."[38] Once the officers approached the car, they detected the odor of marijuana, which gave them probable cause to further detain and question the SUV's driver and passengers.[39]

¶ 24 The Second Circuit affirmed the district court's denial of the defendants' motion to suppress. First, it concluded that the traffic stop was valid because the officers reasonably believed that the SUV lacked a valid license plate.[40] Second, it held "that when police officers stop a vehicle on a reasonable, albeit erroneous, basis and then realize their mistake, they do not violate the Fourth Amendment merely by approaching the vehicle and apprising the vehicle's occupants of the situation."[41] Rather, the Second Circuit concluded that the "touchstone of the Fourth Amendment is reasonableness."[42]

23. *See, e.g., Jenkins,* 452 F.3d at 213–14; *McSwain,* 29 F.3d at 561–62; *People v. Bartimo,* 345 Ill.App.3d 1100, 281 Ill.Dec. 192, 803 N.E.2d 596, 603–04 (2004); *State v. Diaz–Ruiz,* 42 Kan. App.2d 325, 211 P.3d 836, 840–44 (2009); *Commonwealth v. Garden,* 451 Mass. 43, 883 N.E.2d 905, 909 (2008); *State v. Lopez,* 631 N.W.2d 810, 813–14 (Minn.Ct.App.2001).

24. 452 F.3d 207.

25. *Id.* at 209.

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.* at 210.

30. *Id.*

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.*

35. *Id.*

36. *Id.* at 211 (internal quotation marks omitted).

37. *Id.*

38. *Id.* (internal quotation marks omitted).

39. *Id.*

40. *Id.* at 212.

41. *Id.* at 213.

42. *Id.* at 214 (internal quotation marks omitted).

Relying on dicta from *United States v. McSwain*,[43] the court concluded that "it is reasonable for officers who have stopped a vehicle on the basis of a reasonable factual mistake to approach the vehicle and apprise the vehicle's occupants of the situation."[44] And once "the officers approached the SUV, they immediately detected an [odor of marijuana, which became an] independent basis for continuing to detain the SUV and its occupants."[45]

¶ 25 ▮▮▮▮ We find this reasoning persuasive and applicable to Mr. Morris's traffic stop. It is well established under the federal constitution that "[t]he touchstone of the Fourth Amendment is reasonableness."[46] Trooper Williams pulled over Mr. Morris's car based on an objectively reasonable, albeit mistaken, suspicion that the car lacked a current license plate. Our court of appeals concluded that at this point, in spite of the "individual bewilderment" that may arise, the Trooper could not constitutionally make contact with the driver but instead had to wave the driver on and proceed on his way.[47] We disagree. "Individual bewilderment" caused by the unexplained departure of the officer making a traffic stop is not reasonable or desirable. The Fourth Amendment does not require " 'absurd conduct by police officers.' "[48] Drivers should not be left to wonder why they were stopped, nor should they have to experience the fear or confusion, however fleeting, that may result from a lack of explanation. Therefore, we hold that when an officer makes a traffic stop based on an objectively reasonable, albeit mistaken, suspicion that a driver is in violation of a traffic law, it is constitutionally reasonable for the officer to approach the driver and explain his mistake. Although the officer is entitled to offer an explanation, we also hold that the officer may not ask for identification, registration, or proof of insurance at this time unless during this brief encounter, new reasonable suspicion of criminal activity *immediately* arises that justifies further detention. And if further reasonable suspicion arises, we reiterate that the scope of the stop is still limited and officers must diligently pursue a means of investigation that expediently confirms or dispels their regained suspicion.[49]

¶ 26 In announcing our holding today, we consider it important to stress its limited scope. First, our holding is limited to situations where officers have *objectively* reasonable suspicion. It does not allow police officers to rely on subjective criteria, hunches, or assumptions, nor will it facilitate fabricated excuses to detain drivers. Instead, district courts should evaluate the credibility of the officer and any record of the encounter to confirm the basis for the stop was objectively reasonable. Second, our holding entitles the officer to approach the driver for only one purpose: to explain his good faith mistake. This encounter must be brief; the officer is not constitutionally entitled to pepper the driver with unrelated inquiries, nor may he ask for identification, registration, or proof of insurance.[50] The officer may further detain the driver only if he can point to *new* "specific and articulable facts" that lead him to reasonably believe criminal activity is immediately apparent.[51]

43. 29 F.3d 558 (10th Cir.1994).

44. *Jenkins*, 452 F.3d at 214.

45. *Id.* at 213.

46. *Knights*, 534 U.S. at 118, 122 S.Ct. 587; accord *Baker*, 2010 UT 18, ¶ 10, 229 P.3d 650.

47. *Morris*, 2009 UT App 181, ¶ 11, 214 P.3d 883.

48. *Jenkins*, 452 F.3d at 213 (quoting *McSwain*, 29 F.3d at 562).

49. *Lopez*, 873 P.2d at 1132.

50. Mr. Morris also argues that even if we reverse the court of appeals' decision in favor of a rule allowing officers to explain their mistaken reasonable suspicion to drivers, Trooper Williams still went too far in his encounter by accepting Mr. Morris's license and registration. We reject this argument. As discussed in more detail later in this opinion, Trooper Williams smelled a "whiff" of alcohol from the vehicle as soon as Mr. Morris rolled down his window. Thus, Trooper Williams immediately possessed new reasonable suspicion justifying further detention.

51. *Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507 (internal quotation marks omitted).

**2. Trooper Williams's Further Detention Was Reasonable Because the Immediate Odor of Alcohol Constituted New Reasonable Suspicion, Which Justified Further Investigation**

¶ 27 ▮ Having determined that it was constitutionally reasonable for the Trooper to approach Mr. Morris to offer an explanation for the stop, we now examine the Trooper's conduct after he explained his mistake to Mr. Morris to determine whether any further detention was justified. Mr. Morris argues that even if we hold that it was constitutional for the Trooper to offer an explanation, any detention beyond this point was unreasonable in duration and unlawful in scope. The State disagrees. The State argues that the Trooper was justified in his further detention of Mr. Morris because Trooper Williams immediately gained new reasonable suspicion of criminal activity when he detected the odor of alcohol emanating from the car. We agree with the State.

¶ 28 ▮ At oral argument, the parties disputed when exactly the Trooper detected the odor of alcohol, and unfortunately, due to the sensory limitations of reviewing a video recording, we cannot resolve this dispute. Thus, we must rely on the record before the district court to make this determination. At the preliminary hearing, Trooper Williams testified that as soon as Mr. Morris rolled down his window, he could smell the odor of alcohol. The district court relied on this testimony, implicitly acknowledging the officer's credibility. In its order, the district court stated:

If [the officer's] brief contact generated reasonable suspicion of criminal activity, further detention was justified. *That is what happened here.* [Trooper] *Williams's first contact with Morris generated a "whiff" of an alcoholic beverage,* which eventually led to an arrest for DUI.[52]

Because the trial court was in the best position to evaluate the testimony of the officer, we must give deference to its factual finding that immediately upon contact with the driver, Trooper Williams detected the odor of alcohol.[53]

¶ 29 ▮ Taking this fact as true,[54] we further conclude that the smell of alcohol emanating from Mr. Morris's vehicle was enough to generate new reasonable suspicion of criminal activity, thus justifying further detention.[55] The standard for reasonable suspicion is relatively low. "Indeed, 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'"[56] "'The specific and articulable facts required to support reasonable suspicion are most frequently based on an investigating officer's own observations and inferences.'"[57] If the officer concludes that he has reasonable suspicion, he must "diligently [pursue] a means of investigation that [is] likely to confirm or dispel [his] suspicions quickly."[58]

557 30 Here, Trooper Williams smelled alcohol as soon as Mr. Morris rolled down his

---

52. (Emphasis added).

53. *See State v. Tripp,* 2010 UT 9, ¶ 30, 227 P.3d 1251 (noting that when evaluating a motion to suppress "an appellate court should defer to the factual findings of the trial court unless the findings are clearly erroneous"); *State v. Worwood,* 2007 UT 47, ¶ 12, 164 P.3d 397 ("Factual findings underlying a motion to suppress are evaluated for clear error.").

54. Had Trooper Williams not detected the presence of alcohol until he and Mr. Morris reached the rear of the vehicle—as was argued at oral argument—the Trooper's conduct would have been unlawful. Indeed, if an officer in this situation does not *immediately* acquire reasonable suspicion of criminal activity, he must send the driver on his way without further inquiry.

55. *See, e.g., Miller v. Harget,* 458 F.3d 1251, 1261 (11th Cir.2006) (noting the smell of alcohol coming from the car was sufficient to give an officer reasonable suspicion that the driver was under the influence of alcohol).

56. *Markland,* 2005 UT 26, ¶ 10, 112 P.3d 507 (quoting *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)).

57. *State v. Roybal,* 2010 UT 34, ¶ 14, 232 P.3d 1016 (quoting *State v. Case,* 884 P.2d 1274, 1276–77 (Utah Ct.App.1994)).

58. *Lopez,* 873 P.2d at 1132 (first and second alterations in original) (internal quotation marks omitted).

window. From this smell, the Trooper could reasonably infer that Mr. Morris had been drinking and thus the Trooper was justified in taking steps to determine whether Mr. Morris had consumed enough alcohol to exceed the legal limit allowed while operating a vehicle. Trooper Williams asked Mr. Morris if he had been drinking. Mr. Morris denied having anything to drink. Suspecting that Mr. Morris may be lying, the Trooper then asked Mr. Morris to blow into the Trooper's hand so he could determine whether the odor of alcohol was coming from Mr. Morris's breath. Detecting the smell of alcohol, Trooper Williams then conducted a series of field sobriety tests to confirm his suspicion that Mr. Morris was intoxicated. After approximately twenty minutes, Trooper Williams confirmed that Mr. Morris was illegally driving under the influence of alcohol and put him under arrest. This sequence of events demonstrates that Trooper Williams acted reasonably during the encounter and that he quickly and diligently took steps to respond to his building suspicions. We thus conclude that the further detention of Mr. Morris was reasonable in duration and scope and therefore constitutional.

## CONCLUSION

¶ 31 We hold that when an officer initiates a traffic stop based on an objectively reasonable, yet mistaken, belief that a traffic violation has occurred, the officer may initiate contact with the driver to explain his mistake and to end the stop, but may not detain the driver any further. If during this brief encounter the officer immediately regains reasonable suspicion that the occupant(s) of the vehicle are engaged in criminal activity, the officer may continue the stop and respond accordingly. Because Trooper Williams's stop was based on an objectively reasonable mistake of fact, he was allowed to approach Mr. Morris to explain his mistake. The odor of alcohol immediately detected during this encounter allowed Trooper Williams to constitutionally detain Mr. Morris further to determine whether he was illegally driving under the influence of alcohol. We therefore reverse the decision of the court of appeals and remand for proceedings consistent with this opinion.

¶ 32 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice LEE concur in Justice NEHRING's opinion.