Justice LEE,
concurring in part and concurring in the judgment:
T 40 I concur in the judgment of the court and in the bulk of its analysis. As Justice Parrish's majority opinion indicates, the touchstone under the Fourth Amendment is reasonableness, and that standard affords flexibility-not rigid time constraints-for analysis of the constitutional length of a traf-fie stop. Supra 180. And the reasonable breathing space afforded under the constitution likewise leaves room for traffic stop extensions that are de minimis in length but not independently justified by reasonable suspicion. Supra TT31-34. Otherwise, the constitution would be implicated by such commonplace acts as a police officer's small talk or rumination about the weather. See supra 132 (citing United States v. Mason, 628 F.3d 123, 131 (4th Cir.2010), for the proposition that the question " 'How 'bout them Georgia Bulldogs?" doles] not implicate the Fourth Amendment").
" 41 I therefore agree with the majority's decision affirming the denial of Simons's motion to suppress, as the extension of the traffic stop in this case was minimal in length (and was, alternatively, justified by reasonable suspicion in any event, supra 11 21-28). I disagree, however, with the court's assertion that the breathing space for the length of a traffic stop somehow ends when the "lawful purpose of the stop has concluded" by "issuance of a warning or a ticket" or the "arrest or dismissal of the detainee." Supra 35. Thus, I would not hold that after such "conclusion" of a stop "any [even de minimis] further questioning, investigation, or detention requires reasonable suspicion." Supra 35 (emphasis added).
142 That dictum preserves elements of our prior case law.[1] But it is incompatible with the reasonableness criterion of the Fourth Amendment as articulated by the U.S. Supreme Court, and it has been overtaken by subsequent authority in this court (including the logic of our opinion today). I would accordingly disavow the language in our prior cases that purports to foreclose even de minimis extensions beyond the lawful conclusion of a traffic stop.
43 As the majority explains, Arizona v. Johnson, 555 U.S. 828, 388, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), elucidates the constitution's reach in cases involving "[an officer's inquiries into matters unrelated to the justification for [a] traffic stop." See supra 11 29-30. It clarifies that such inquiries implicate Fourth Amendment concerns only to the extent they extend the duration of the stop. Johnson, 555 U.S. at 338, 129 S.Ct. 781. Thus, collateral inquiries "do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Id.
[ 44 The court's opinion today appropriately clarifies the standard for determining whether an inquiry "measurably extendf[s]" a traffic stop. Reasoning from the Fourth Amendment's touchstone of reasonableness and citing case law in this and other jurisdictions, the majority rightly concludes that mere de minimis extensions survive constitutional scrutiny despite a lack of reasonable *733 suspicion for the inquiry leading to the extension. Supra 129. That analysis, however, is logically incompatible with the court's denial of de minimis breathing room at the back end of a traffic stop. If the reasonableness criterion of the Fourth Amendment leaves flexibility for de minimis extensions during the course of a traffic stop, it must likewise preserve such room as the stop comes to a close.
{45 That was the essence of our recent holding in State v. Morris, 2011 UT 40, ¶ 25, 259 P.3d 116. There the basis for the traffic stop-an apparently missing license plate-disappeared when the officer noticed a temporary registration tag as he was pulling the vehicle over. Id. T4. Yet although at that point the "lawful purpose of the stop ha[d] concluded," supra 185, we nonetheless upheld the officer's further extension of the stop to allow him to provide a brief explanation of why he had initiated the stop. Morris, 2011 UT 40, 11 25-26, 259 P.3d 116. By implication, our Morris decision embraced a notion of de minimis breathing space at the back end of a traffic stop. Otherwise, we could not have upheld the officer's further detention of the vehicle, which resulted from an inquiry that took place after the "lawful purpose of the stop hald] concluded." Supre 1 35.
T46 Morris is irreconcilable with the majority's dictum foreclosing "amy further questioning, investigation, or detention" after the lawful purpose of the stop has ended. Supre 135 (emphasis added). Clearly there was further detention in Morris after the stop's lawful purpose ended. And yet we upheld it against a Fourth Amendment challenge-in a manner necessarily (if implicitly) leaving room for de minimis extension of a traffic stop beyond its lawful termination.
147 Presumably the court today is not overruling Morris Perhaps it finds that case distinguishable on its facts-on the ground, for example, that the detained driver in Morris may have been uncertain whether the stop had in fact terminated or whether he was indeed free to leave. But that will often be true in cases of this nature, and that and other uncertainties are good reasons not to establish a hard-and-fast rule against any further detention after the stop has ended.
148 Consider a hypothetical variation on the facts of this case, in which Deputy Luke hands the driver his license and registration and a speeding ticket while stating, "here you go, drive safely ... but before you do I'm wondering whether there's anything else I should know about." The length of the extension of the stop in the hypothetical is equal to the one in the actual case, so both extensions should withstand constitutional serutiny if the question is simply the reasonableness of the delay. But under the majority's dictum, the hypothetical extension is constitutionally problematic, as it comes after the lawful purpose of the stop had ended. That is troubling. I see no difference between the hypothetical and the actual case, or at least no difference of any constitutional significance.
T 49 In the hypothetical seenario, the vehicle's occupants could have one of two possible reactions to the officer's statements. One reaction would be to conclude that the traffic stop is not really at an end, given the immediacy of the follow-up question about "anything else." In that event the case would look a lot like the scenario in Morris, in which an extension would be justified because it is de minimis in nature and not otherwise unreasonable. If, on the other hand, the vehicle occupants reacted by genuinely perceiving the vehicle stop to be at an end (and the further inquiry to be gratuitous small talk), then they would necessarily conclude that they were free to leave. And in that event any further inquiry would not be a detention, but a voluntary interaction.[2] Either way, there is nothing constitutionally problematic about a de minimis extension that comes after an arguable termination of *734 the stop-unless the extension is more than de minimis and thus unreasonable, which is the dispositive question under the Fourth Amendment.
T50 Today's hard-and-fast rule against any extensions beyond the conclusion of the lawful basis of the stop misses the constitutional mark. Instead of focusing on the reasonableness of any detention, this dictum will require the courts to referee a fuzzy line going forward-a line designating the formal conclusion of a stop for Fourth Amendment purposes. I would avoid drawing such a line because it is unworkable and, more importantly, because it is not the line prescribed by the constitution.
{51 I would likewise repudiate the language in our recent precedents articulating this rule.[3] Doing so would not require a disavowal of the holdings of these cases, however. In Baker and Gettling, after all, we ultimately upheld the traffic stops at issue under the good-faith exception to the exelu-sionary rule, see State v. Baker, 2010 UT 18, 1135-40, 229 P.3d 650; State v. CGettling, 2010 UT 17, 18, 229 P.8d 647, so our statements requiring a bright-line end of the detention at the conclusion of a stop were unnecessary. And even State v. Hansen, 2002 UT 125, 63 P.3d 650, is consistent with the de minimis standard articulated by the court today. There the extension of the traffic stop not only came after the officer returned the motorist's license and registration; it was also quite extensive (and hardly de minimis), in that it involved not just a single question about alcohol, drugs, or weapons (which was answered in the negative) but further pestering culminating in a request for a search of the vehicle for these items. Id. TM 12-15. Such questioning and ensuing search would hardly be de minimis, so our conclusion that the detention was extended unreasonably was correct-and consistent with the de min-imis standard that flows from the reasonableness criterion of the Fourth Amendment.
52 We should recast the holdings of our prior cases in these terms and disavow their dicta as overtaken by subsequent authority. I disagree with the portion of the court's decision reinforcing the notion of a hard prohibition on any further detention after the end of a traffic stop, and would affirm in this case without cementing that problematic position in our case law.

. See State v. Hansen, 2002 UT 125, ¶ 31, 63 P.3d 650 ("Once the purpose of the initial stop is concluded ... the person must be allowed to depart. Any further temporary detention for investigative questioning after [fulfilling] the purpose for the initial traffic stop constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality" (second alteration in original) (internal quotation marks omitted)); State v. Gettling, 2010 UT 17, 15-7, 229 P.3d 647 (declining to "adopt any de minimis exception to a passenger's Fourth Amendment rights in order to allow officers to conduct a canine sniff after the lawful purpose of the stop has concluded" because "[wlhen officers have concluded their investigation of their initial suspicion and any further suspicion that arose during the stop, they are required to end the detention" (emphasis added)); State v. Baker, 2010 UT 18, 131, 229 P.3d 650 (concluding that "any detention of an individual after the purpose for the initial detention has concluded violates the Fourth Amendment" (emphasis added)).

. See Hansen, 2002 UT 125, 137, 63 P.3d 650 ("While a traffic stop may begin as an investigatory detention, it is possible for it to de-escalate to a consensual encounter. Since a consensual encounter is not a seizure, questioning during such an encounter is lawful, regardless of scope, as long as the person remains a willing participant." (citations omitted)); see also State v. Alverez, 2006 UT 61, 110, 147 P.3d 425 (noting that consensual encounters are not seizures under the Fourth Amendment).

. See supra M42 n. 1.