

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2007

# USA v. Leal

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Leal" (2007). *2007 Decisions.* Paper 978.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/978

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1447

UNITED STATES OF AMERICA

v.

ROBERT VALDEZ LEAL,

Appellant.

Appeal from the United States District Court
for the Western District of Pennsylvania
(04-cr-00028)
District Court: Hon. Kim R. Gibson

Argued: April 16, 2007

BEFORE: McKEE, AMBRO, <u>Circuit Judges</u>,
and ACKERMAN, <u>Senior District Court Judge.</u><sup>*</sup>

(Opinion Filed: June 8, 2007)

KIMBERLY R. BRUNSON (Argued)
Appellate Attorney
LISA B. FREELAND
KAREN S. GERLACH
Federal Public Defender

_____

* The Honorable Harold A. Ackerman, Senior District Judge for the United States
District Court of New Jersey, sitting by designation.

1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, Pennsylvania 15222
<u>Attorneys for Appellant</u>

REBECCA R. HAYWOOD (Argued)
Assistant U.S. Attorney
MARY BETH BUCHANAN
ROBERT L. EBERHARDT
United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
<u>Attorneys for Appellee</u>

---

OPINION

---

McKEE, <u>Circuit Judge</u>.

Robert Valdez Leal asks us to review the district court's denial of the motion to suppress he filed following his arrest for possession of a controlled substance with the intent to distribute. For the reasons that follow, we will affirm the District Court's denial of Leal's suppression motion.

## I.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's legal conclusions is *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *see also United States v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005). However, we accept findings of fact made by the District Court unless clearly erroneous. *See id.*

2

Inasmuch as we write primarily for the parties who are familiar with the facts of this case, we need not recite the factual or procedural background except insofar as may be helpful to our discussion.

**A. Initial Stop**

Leal's first argument that Trooper Volk did not have probable cause to stop his vehicle is frivolous. Volk testified credibly that he stopped Leal because the windows on Leal's car were heavily tinted and appeared to be in violation of a provision of the Pennsylvania Vehicle Code that prohibits excessive window tint. S*ee* 75 Pa.C.S. § 4524(e)(1). A law enforcement officer's good faith decision to stop a car is "reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). *See, e.g., Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (holding that tinted windows alone would justify a police officer's stop if the window tint was so dark that an officer, acting reasonably, would have suspected there was a traffic violation).

Leal argues that his car was exempt from the prohibition against tinted windows because the tint was applied by the manufacturer and therefore his car fit within the statutory exception to the prohibition. We need not respond to that argument. Law enforcement officers have broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions if the legal justification is objectively grounded. *See United States v. Lopez-Soto*, 205 F.3d

3

1101, 1105 (9th Cir. 2000) (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998); *see also United States v. Sanders,* 196 F.3d 910, 913 (8th Cir. 1999) (holding that an officer's mistaken, but objectively reasonable, belief that a traffic violation occurred supported a traffic stop). Whether or not Leal's car was technically in violation of the statute, Officer Volk could have reasonably believed that Leal was in violation of the statute because the windows were heavily tinted. *See Sanders*, 196 F.3d at 913.

Leal attempts to establish that Trooper Volk's testimony was not credible because of discrepancies in Volk's testimony. He argues that Volk's reliance on the window tint violation was mere pretext for the stop and that Volk actually stopped him as part of a "fishing expedition," based only on the fact that Leal was driving an "older vehicle with Texas plates . . . through Western Pennsylvania." Appellant's Br. at 26.

Here again, we need not respond. Trooper Volk's subjective motivation for initiating the traffic stop is irrelevant. In *Whren*, the Court stated: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." 517 U.S. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 136 (1978) (internal quotation marks omitted)). Accordingly, Trooper Volk clearly had probable cause to stop Leal's car.

### B. Investigative Stop

The real issue here is not the initial stop, but the detention that ensued. Leal argues

that his continued detention was beyond the parameters of a brief investigatory stop that the Court established in *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  Specifically, he contends that Trooper Volk's decision to detain him pending the arrival of "Zeus" (the drug sniffing dog), was unlawful because it was caused by Leal's refusal to consent to a car search.

The District Court found that Trooper Volk's decision to detain Leal was not based upon Leal's refusal to consent, but instead, in part, upon Leal's statement that he had consulted a lawyer before driving from Texas, which Trooper Volk found to be very unusual.  Leal argues that Volk could only continue the stop after Leal refused to consent if there were additional grounds to support what Leal characterizes as a "second stop."

It is well established that a refusal to consent to a search cannot be the basis for a finding of reasonable suspicion.  *Karnes v. Skrutski*, 62 F.3d 485, 495-96 (3d Cir. 1995).  In *United States v. Williams*, the court recognized that an officer's consideration of a defendant's refusal to consent to a search would violate the Fourth Amendment.  271 F.3d 1262, 1268 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002).  Accordingly, the court ignored that refusal but still upheld the search.  The totality of the circumstances there rose to the level of probable cause without factoring in the defendant's refusal to consent to a search.  The court explained:

> Williams fails to cite any case, nor can we find any, suggesting that the return of such documentation negates an officer's objectively reasonable suspicions developed during a traffic stop.  Although the record indicates that the [trooper] subjectively intended that Mr. Williams was free to go, the

5

relevant inquiry in this case is based on the objective facts known to the [trooper], not upon the [trooper's] subjective state of mind. [citations omitted] . . . Whether the [trooper] never intended to release Mr. Williams or whether he simply changed his mind after the consensual questioning does not alter our analysis if the [trooper] already had sufficient reasonable suspicion to detain [the defendant] for the purpose of the canine drug search. We therefore conclude that the [trooper's] indication to Mr. Williams that he was free to leave bears no significance in our determination of whether the [trooper] had reasonable suspicion to detain Mr. Williams.

*Id.* at 1271.  Other courts have followed the reasoning of *Williams*.  *See, e.g., United States v. Foreman*, 369 F.3d 776, 784 (4th Cir. 2004); *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004).

Leal is obviously correct in arguing that his refusal to consent cannot contribute to a finding of reasonable suspicion.  *See Karnes*, 62 F.3d at 495-96.  However, Leal cites no case law, and we have found none, that would require Volk to ignore all that he had observed and all that he knew up to the moment he asked for consent.  We need not recite each of the fourteen factors that Volk relied upon in deciding to detain Leal until Zeus could arrive to sniff Leal's car.  Although the totality of those circumstances do not rise to the level of probable cause to arrest, they certainly approach that threshold and certainly support a finding of articulable suspicion.  Although Volk's information does not rise to the level of probable cause, we can not ignore either the strength or quality of Trooper Volk's suspicion in evaluating his decision to continue to detain Leal for the sole purpose of further investigation under *Terry*.

6

The more troubling questions are whether the length of the delay between the time Volk radioed for the dog and the time Zeus arrived was so great that it either constituted a *de facto* arrest, or was inconsistent with the limited intrusion allowed under *Terry*.

## C. The Length of the Detention

Leal's strongest argument is that his detention for at least one hour and twenty minutes following the traffic stop was actually a *de facto* arrest that was unlawful under the Fourth Amendment because it was not supported by probable cause. Leal makes a related but different argument that the length of the delay was simply unreasonable given the limits of *Terry,* whether or not Trooper Volk was justified in "briefly" detaining him.

Leal's argument is not without substantial force. It is clear that *Terry* does not allow police to arrest a suspect only to hold him/her until police can determine if there was probable cause to make an arrest in the first place. Similarly, the intrusion the Court authorized in *Terry* is limited to a *brief* detention to determine if criminal activity is afoot. *See Terry*, 392 U.S. at 33. A *Terry* stop was never intended to authorize a lengthy detention to complete an investigation that is prompted by the articulable suspicion that is the condition precedent of the intrusion allowed under *Terry*.

The line between a proper *Terry* stop and an improper *de facto* arrest is elusive and not easily drawn. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). In considering whether a stop is "so minimally intrusive as to be justifiable on reasonable suspicion," *id.* (quoting *United States v. Place*, 462 U.S. 696, 709 (1983)), courts consider the duration

7

of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the police could have served their purposes. *Id.* at 684-87.

The Supreme Court has set forth an objective standard for determining whether a person has been "seized" for the purposes of the Fourth Amendment: "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also Florida v. Bostick*, 501 U.S. 429, 435 (1991) ("When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking."). Here, Trooper Volk did not intend to let Leal leave before Zeus arrived. In addition, we think it fair to conclude that a reasonable person in Leal's situation would not have felt free to leave. However, that does not necessarily negate a conclusion that Leal was being detained pursuant to *Terry* as opposed to being arrested. A suspect is not free to leave during a *Terry* stop, and Volk did nothing to suggest that Leal could not leave immediately upon the conclusion of the dog sniff if the dog failed to find any additional evidence of drugs in Leal's car. Accordingly, we conclude that Leal was not under arrest before the dog arrived and that his detention was an investigatory stop to determine if Volk's very reasonable suspicion was justified.

8

However, the foregoing analysis does not end our inquiry. Leal argues persuasively that even a purely investigatory stop initiated under the circumstances here can offend the Fourth Amendment if it is more than the *brief* intrusion allowed under *Terry*. Thus, we must determine whether Leal's detention went beyond that which is allowed for a *Terry* stop.

In *Dunaway v. New York*, the court explained that a *Terry* stop must be limited in duration, and that a more lengthy detention "must be based on consent or probable cause." 442 U.S. 200, 212 (1979). However, there is "no rigid time limitation on *Terry* stops." *Sharpe*, 470 U.S. at 685. A stop may be too long if it involves "delay unnecessary to the legitimate investigation of the law enforcement officers." *Id.* at 687.

The Supreme Court has refused to impose a stringent time limit on the duration of an investigative stop under *Terry*. Rather, the inquiry considers the nature of the investigatory actions of the police, *i.e.*, "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 676; *see also Michigan v. Summers*, 452 U.S. 692, 702 n.14 (1981).

Leal relies heavily on *United States v. Place*, 462 U.S. 696 (1983). There, the Supreme Court held that a ninety-minute delay before federal agents used a narcotics detection dog to sniff Place's luggage was sufficient "alone [to preclude] the conclusion that the seizure was reasonable in the absence of probable cause." *Id.* at 709. The Court

9

therefore ordered the suppression of the evidence produced in the search. *Id.* In

recognizing an individual's "liberty interest in proceeding with his itinerary," 462 U.S. at

708, the Court observed:

> [a] person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage. Moreover, he is not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained. Nevertheless, such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return**.**

*Id.* at 708-709 (footnote omitted).

We distinguished *Place* in *United States v. Frost* to hold that an eighty-minute

delay under the circumstances of that case was acceptable under *Terry*. 999 F.2d 737,

740-42 (3d Cir. 1993), *cert. denied*, 510 U.S. 1001 (1993). Thus, if we focus only on the

length of the delay here, it is a very close case indeed. However, we can not say, given all

the facts known to Trooper Volk when he radioed for the canine unit, that the limitations

of *Terry* were *per se* violated based on the length of time it took the unit to arrive at the

scene.

In deciding if the delay was nevertheless unreasonable or otherwise so intrusive as

to violate *Terry*'s parameters, we begin by stressing that nothing on this record suggests

that Trooper Volk knew that it was going to take the canine unit 80 minutes to arrive

when Volk radioed for the dog. It is uncontested that Trooper Johnson, the officer

bringing Zeus, was delayed en route because of construction. Trooper Volk was diligent

10

in his attempts to further investigate Leal's vehicle, and his efforts to expeditiously resolve his suspicions were frustrated by circumstances beyond his control. Given that, along with the quantity and quality of the factors that gave rise to Trooper Volk's suspicion, we conclude that Leal's detention may have bumped up against the outer limit of a *Terry* stop, but it did not cross it. Accordingly, we hold that the District Court did not err in denying Leal's motion to suppress the physical evidence.[1]

### III. CONCLUSION

For the reasons set forth above, we will affirm the order of the District Court denying Leal's motion to suppress physical evidence.

---

[1] Although we are affirming the denial of the suppression motion here, our holding should not be interpreted as condoning a practice of requesting additional investigation without any concern for the length of the detention. Rather, law enforcement officers in the position that Volk was in here should make appropriate inquiries to ensure that the delay attendant to any additional investigation is not so lengthy or restrictive that it runs afoul of the parameters prescribed by *Terry*. Moreover, the detention allowed under *Terry* is limited even when officers take such precautions. At some point, the detention required for additional investigation can become so restrictive or prolonged that it is tantamount to an arrest and must therefore be supported by probable cause if it is to withstand constitutional scrutiny. We are simply holding that, under the circumstances here, Leal's detention did not reach that point.

11