IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100486-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (April 5, 2012) |
| Luis Parra Gomez, | ) | |
| | ) | 2012 UT App 102 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 081402283
The Honorable Lynn W. Davis

Attorneys: Margaret P. Lindsay and Matthew R. Morrise, Provo, for Appellant
Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Davis.

VOROS, Associate Presiding Judge:

¶1 The encounter at issue in this appeal began with a traffic stop and ended with the search of a hotel room. Defendant Luis Parra Gomez consented to the search, but challenges the voluntariness of that consent. We affirm.

BACKGROUND[1]

¶2    Around midnight on August 3, 2008, on University Parkway in Orem, Officer Scott Speeth stopped a car for a taillight violation. The car, a rental, held three occupants. Gomez was in the back seat. When the officer approached the car and requested the driver's identification, he noticed that Gomez was not wearing a seat belt. In addition, a routine records check revealed that the driver had a suspended license and a criminal history related to drug trafficking. Three or four minutes into the stop, as he began to issue the citation, the officer requested a canine unit. Within five minutes, the unit arrived. The drug dog indicated the possible presence of narcotics.

¶3    The officer ordered all three occupants out of the car and separately questioned them. Each, including Gomez, denied having visited any hotels in the area. In fact, Gomez indicated that his mother lived in Provo. Officers searched the car and all three occupants but found no drugs. However, they did find two items of interest: on the car's dashboard they found a parking permit for a hotel located 100 feet away, and in the driver's shoe they found $4,000 in cash. Officer Speeth called the hotel and learned that the parking pass had been issued to a room registered to Gomez. By this time, thirty to forty minutes had elapsed since the initial stop. The officer asked Gomez why he had lied about the hotel room. Gomez stammered a bit and gave inconsistent explanations. At that point, the driver's criminal history, the fact that Gomez had rented a hotel room notwithstanding his mother lived in Provo, the rental car, the dog alert, the $4,000 in the driver's shoe, the inconsistent explanations, and the initial lie about the hotel led the officer to believe "that there was a likelihood there were narcotics inside the hotel room."

¶4    The officer asked Gomez for consent to search the hotel room. Gomez replied that he "did not want to be put in that kind of a position." The officer interpreted this response to mean that "possibly some of the other occupants [of the car] had something

---

1. The "legal analysis of a search and seizure case is highly fact dependent." *State v. Hansen*, 2002 UT 125, ¶ 5, 63 P.3d 650 (internal quotation marks omitted). "[W]e recite the facts in detail[,]" and, "[w]here appropriate, we supplement the [trial] court's findings with relevant testimony" given by Orem Police Officer Scott Speeth at the preliminary hearing held on February 18, 2009. *See id.* (citations and internal quotation marks omitted).

incriminating inside the hotel room" and that Gomez did not want to expose them. The officer again requested consent to search the hotel room. The gist of Gomez's reply was that if the other two passengers would agree to allow officers into the room, then Gomez was "okay with it." The officer spoke to the other two suspects. Both denied having been in the hotel room or having any claim to anything in the room. When the officer informed Gomez of their responses, Gomez "pretty much shrugged his shoulders and agreed to let [the officers] in." Officer Speeth walked to the hotel room with Gomez, who was not handcuffed or physically restrained. Gomez used his key card to open the door. In the room, Officer Speeth found cocaine, marijuana, a digital scale, and a measuring spoon. Gomez admitted the drugs were his. Officers arrested Gomez and released his companions.

¶5     Gomez was charged with two counts of possession of a controlled substance with intent to distribute in a drug-free zone, first and third degree felonies, *see* Utah Code Ann. §§ 58-37-8(1)(a)(iii), (b), 58-37-8(4) (2008), and one count of possession of drug paraphernalia in a drug-free zone, a class A misdemeanor, *see id.* §§ 58-37-8(4), 58-37a-5(1). Gomez moved to suppress the hotel room evidence. The trial court denied the motion, ruling that the police legally detained Gomez and that his consent to search the hotel room was voluntary. Gomez entered conditional pleas of guilty to all three counts, reserving the right to appeal the court's denial of his suppression motion.

ISSUE AND STANDARDS OF REVIEW

¶6     Gomez contends that the search of his hotel room violated the Fourth Amendment because his consent to the search was the product of a prior police illegality, specifically, an illegal detention. *See Brown v. Illinois*, 422 U.S. 590, 600–04 (1975) (stating that to ensure that a violation of the Fourth Amendment "has not been unduly exploited" to obtain a confession, the prosecutor must show "not merely that the statement meets the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint" (internal quotation marks omitted)); *accord State v. Arroyo*, 796 P.2d 684, 687–91 (Utah 1990). Whether consent was given presents a question of fact reviewed for clear error; whether consent was voluntary presents a question of law reviewed for correctness. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699 (citing *State v. Hansen*, 2002 UT 125, ¶ 51, 63 P.3d 650). Moreover, in search cases the application of law to the underlying facts is reviewed without deference to the trial court. *See id.*

ANALYSIS

¶7     The Fourth Amendment to the United States Constitution protects people from "unreasonable searches and seizures" of "their persons, houses, papers, and effects" by the government.  U.S. Const. amend IV.  "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth] Amendment[ ], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653 (1979).  A traffic stop must therefore be reasonable in scope to be upheld.  *See State v. Morris,* 2011 UT 40, ¶ 15, 259 P.3d 116.

¶8     To determine whether a traffic stop is reasonable, we apply a two-step test derived from *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968).  Step one asks whether the police officer's action was justified at its inception; step two asks whether the ensuing detention was reasonably related in scope to the circumstances that justified the stop in the first place.  *See id.; State v. Applegate*, 2008 UT 63, ¶¶ 8–9, 194 P.3d 925.  A traffic stop is justified at its inception when the officer "has reasonable articulable suspicion that the driver is committing a traffic offense."  *See State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) (internal quotation marks omitted).  In assessing whether officers had reasonable suspicion to detain, "[w]e 'look to the totality of the circumstances . . . to determine if there was an objective basis for suspecting criminal activity.'"  *State v. Baker*, 2008 UT App 115, ¶ 11, 182 P.3d 935 (omission in original) (quoting *State v. Beach*, 2002 UT App 160, ¶ 8, 47 P.3d 932), *aff'd*, 2010 UT 18, 339 P.3d 650.

¶9     During a lawful traffic stop, "[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop."  *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).  "[I]f, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion."  *Morris*, 2011 UT 40, ¶ 15 (internal quotation marks omitted).  But without additional reasonable suspicion, the officer must allow the seized person to depart once the purpose of the stop has concluded.  *See Hansen*, 2002 UT 125, ¶ 31.  Even where additional reasonable suspicion exists, officers must "diligently pursue[] a means of investigation that [is] likely to confirm or dispel their suspicions quickly."  *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

¶10     Here, Gomez does not challenge the initial traffic stop, the dog sniff, the search of the car, or the search of the occupants.  Indeed, he concedes that Officer Speeth harbored reasonable suspicion that Gomez was involved in drug trafficking up to the

moment when the officer first sought and was denied consent to search Gomez's hotel room.[2] However, Gomez contends that after his "initial refusal to give consent, Officer Speeth could not lawfully detain Gomez any longer in order to question the driver and the other passenger or to continue to seek Gomez's consent." Gomez's claim of unlawful detention thus does not rely on the duration of the post-refusal detention or on the shift of the locus of the investigation from the roadside to the hotel room. *See State v. Worwood*, 2007 UT 47, ¶ 30, 164 P.3d 397 ("[T]ransporting a suspect can change the level of coercion involved in an investigative detention to the degree that it is no longer justified under reasonable suspicion."). Rather, once Gomez refused consent, he asserts, the officer "had done all that he could to quickly confirm or dispel his suspicion that Gomez was involved [in] drug trafficking." Accordingly, after that point, he maintains, the detention was illegal, and his later consent to the hotel room search was the product of that illegality.[3]

¶11    To the extent that Gomez is asserting that his refusal to consent to the search ended the investigation as a matter of law, we do not agree. Courts generally hold that refusal to consent cannot establish or—according to some courts—even support reasonable suspicion. *See, e.g., United States v. Leal*, 235 F. App'x 937, 940 (3d Cir. 2007) "[R]efusal to consent cannot contribute to a finding of reasonable suspicion."); *United States v. Santos*, 403 F.3d 1120, 1125 (10th Cir. 2005) ("A refusal to consent to a search cannot itself form the basis for reasonable suspicion. . . ."); *State v. Sweeney*, 227 P.3d 868, 876 (Ariz. App. 2010) ("[I]nvocation of one's constitutional rights cannot constitute a

---

2. The concession is presumably based on the facts articulated above in ¶ 3.

3. The State contends that Gomez failed to preserve this claim in the trial court. The thrust of the State's argument is that Gomez argued in the trial court that the detention became illegal once the search of the car failed to turn up drugs, whereas he argues on appeal that the detention became illegal minutes later when he initially refused consent to search the hotel room. "The general rule is that issues not raised [below] cannot be argued for the first time on appeal, and this rule applies to constitutional questions." *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994); *see also Brigham City v. Stuart*, 2005 UT 13, ¶ 14, 122 P.3d 506 (stating that appellate courts are "resolute in our refusal to take up constitutional issues which have not been properly preserved, framed, and briefed"), *reversed on other grounds*, 547 U.S. 398 (2006). We do not believe that Gomez's appellate concession so alters the complexion of his claim as to make it effectively a new—and thus unpreserved—claim on appeal.

circumstance that gives rise to reasonable suspicion."); *In re H.H.*, 94 Cal. Rptr. 3d 450, 454 (Cal. Ct. App. 2009) (same) (citing *Santos*, 403 F.3d at 1125–26); *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App. 2009) ("refusal to consent to search does not, in and of itself, establish [reasonable suspicion]"); *see also State v. Humphrey*, 937 P.2d 137, 145 (Utah Ct. App. 1997) (Greenwood, J., dissenting) (stating that a suspect's urging of co-suspect not to consent to search "provides little support for reasonable suspicion of criminal activity"). The Tenth Circuit has well stated the rationale of these cases: "If refusal of consent were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections. A motorist who consented to a search could be searched; and a motorist who refused consent could be searched, as well." *Santos*, 403 F.3d at 1125–26; *see also United States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998) ("Any other rule would make a mockery of the reasonable suspicion and probable cause requirements, as well as the consent doctrine.").

¶12    However, the issue here is not whether refusal to consent *supports* reasonable suspicion, but whether it *dispels* reasonable suspicion, or at any rate terminates an officer's attempts to confirm or dispel his or her original reasonable suspicion. On this point, the case law is equally clear. Gomez "cites no case law, and we have found none, that would require [the officer] to ignore all that he had observed and all that he knew up to the moment he asked for consent." *See Leal*, 235 F. App'x at 940. Indeed, courts routinely hold post-refusal detentions to be supported by pre-refusal reasonable suspicion under an ordinary totality-of-the-circumstances analysis. *See, e.g., United States v. Briasco*, 640 F.3d 857, 859–60 (8th Cir. 2011) (rejecting defendant's claim that police "lacked reasonable suspicion to detain him [for forty-two minutes] after he refused consent to search the car"); *United States v. Whitney*, 391 F. App'x 277, 281-82 (4th Cir. 2010) (rejecting defendant's claim that "once he refused consent to search his car, [police] lacked reasonable suspicion to detain [him for several minutes] until a drug dog arrived on the scene"), *cert. denied*, 131 S.Ct. 954 (2011); *Leal*, 235 F. App'x at 942 (holding that defendant's eighty-minute detention after he refused consent "may have bumped up against the outer limit of a *Terry* stop, but it did not cross it"); *United States v. Schlieve*, 159 F. App'x 538, 543–44 (5th Cir. 2005) (detention of over an hour after suspect refused consent to search was not unreasonable); *Santos*, 403 F.3d at 1124–34 (holding that a twenty-two minute detention after suspect refused consent was not unreasonable); *People v. Garcia*, 251 P.3d 1152, 1159-60 (Colo. Ct. App. 2010) (upholding detention after suspect's "denial of having contraband and refusal to consent to search"), *cert. denied*, 2011 WL 976736 (Colo. Mar. 21, 2011). Thus, a brief investigative detention of a suspect who has refused consent, like any other official detention, is

lawful to the extent it is supported by reasonable suspicion, and the investigating officer acts diligently to pursue a means of investigation likely to quickly confirm or dispel that suspicion. *See Sharpe,* 470 U.S. at 686.

¶13    Nor do we agree with Gomez that, as a factual matter, once he denied consent to search, Officer Speeth "had done all that he could to quickly confirm or dispel his suspicion that Gomez was involved [in] drug trafficking." Gomez's own response to the officer's request suggested a further avenue of investigation. When the officer made the original request, Gomez did not consent, but neither did he categorically refuse consent. He gave a response from which the officer inferred that "some of the other occupants had something incriminating inside the hotel room." That inference cued up the next logical step in the investigation: determining whether Gomez's companions would object to a search of the hotel room. When they disclaimed any interest in the room, the officer again approached Gomez. This time, Gomez consented.

¶14    Gomez has not shown how asking a few additional questions of the other occupants to resolve his implied concern deviated from the officer's otherwise diligent pursuit of "a means of investigation that was likely to confirm or dispel [his] suspicions quickly." *See United States v. Sharpe,* 470 U.S. 675, 686 (1985). Officer Speeth had not "purposefully embarked on what was legally nothing more than a fishing expedition, apparently 'in the hope that something might turn up.'" *See United States v. Sandoval,* 29 F.3d 537, 544 (10th Cir. 1994) (quoting *United States v. Fernandez,* 18 F.3d 874, 883 (10th Cir. 1994)). Rather, he was still pursuing "all that he had observed and all that he knew up to the moment he asked for consent." *See Leal,* 235 F. App'x at 940.

¶15    Gomez has not shown that his refusal to consent to a search rendered his continuing detention illegal. Consequently, we need not reach his argument that his ultimate consent was involuntary because it was the product of police exploitation of illegal detention. *See State v. Hansen,* 2002 UT 125, ¶ 47, 63 P.3d 650 (explaining that consent to search is valid only if consent was voluntary and not obtained by police exploitation of a prior illegality).


CONCLUSION

¶16    While Gomez's initial refusal to consent to a search of his hotel room did not as a matter of law contribute to the officer's reasonable suspicion, neither did it require

termination of the detention. The officer had the same reasonable suspicion after the refusal as before. And he had a ready means of continuing to diligently pursue it, which he did by asking Gomez's companions if they objected to a search of the room. Because Gomez has not shown that his continued detention was illegal, he cannot show that his ultimate consent was involuntary as the product of an illegal detention. Consequently, we affirm.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

-----

¶17    I CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶18    I CONCUR IN THE RESULT:

_____
James Z. Davis, Judge