NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3604
_____

UNITED STATES OF AMERICA

v.

TYRONE DAVID ROBINSON,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-11-cr-00007-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2013

Before: SLOVITER, FUENTES, and ROTH, Circuit Judges

(Opinion Filed: July 2, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge

Tyrone David Robinson challenges his conviction for possession with intent to

distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(i),

and 18 U.S.C. § 2.  On appeal, Robinson argues that the District Court erred in failing to

1

suppress 457 grams of heroin found in the trunk of his car.  For the reasons that follow, we will affirm the District Court's denial of the Motion to Suppress.

**I.**

On the morning of December 8, 2010, Pennsylvania State Police Trooper Justin Hope was traveling westbound in an unmarked state police car on the Pennsylvania Turnpike, in West Pennsboro Township, Cumberland County, Pennsylvania.  Hope used his speedometer to clock a gold Jeep Cherokee traveling at seventy-seven miles per hour in a fifty-five mile per hour construction zone.  After following the Jeep for some distance, Hope pulled the vehicle over and conducted a traffic stop.  Hope then instructed Robinson to pull into a larger parking area approximately fifty feet ahead.

Hope informed Robinson that he had been pulled over for speeding through a construction zone, and requested a driver's license and registration.  Robinson produced the requested documents, all of which were valid.  However, Hope noticed that the registration was in a third party's name, and that Robinson's license was issued in Pennsylvania, while the Jeep's registration and license plates were issued in New Jersey.  Robinson explained that his girlfriend owned the Jeep, and he was borrowing the car to pick up his three children in Pennsylvania and bring them back to New Jersey.  Hope became suspicious of Robinson's travel plans when he was informed that one child was eleven years old, because an eleven-year old child typically would be attending school on a Wednesday.  At this time, Hope also sensed a strong odor emanating from multiple pink air fresheners that were hanging from the Jeep's rearview mirror.  He also noticed two cellular phones sitting on the center console.

Hope returned to his car to perform a license and registration check, and to inquire about outstanding warrants and criminal history. The checks revealed that Robinson had a criminal history in New Jersey and in New York, which included three prior arrests, two for controlled substance violations, and one for aggravated assault and possession of a firearm.

Hope later testified that based on his experience,[1] there were several circumstances making him suspect that Robinson could be involved in some criminal activity. He noted that: 1) the Pennsylvania Turnpike was a drug trafficking corridor; 2) Robinson's choice to pull over on the narrow shoulder was a tactic often used to create an unsafe situation for the officer, to ensure that a traffic stop will be relatively short; 3) Robinson's travel plans were unusual; 4) air fresheners were often used by individuals attempting to mask the smell of illegal drugs; 5) borrowed vehicles were used by drug traffickers, to make the seizure of a vehicle more difficult; 6) the possession of multiple cell phones was characteristic of drug traffickers; and 7) Robinson had a criminal history.

After receiving the information regarding Robinson's criminal history, Hope called for backup and a K-9 unit, requesting that the unit remain nearby in case it was needed. Corporal Greg Miller arrived at the scene approximately twenty minutes later (about thirty minutes after the initial traffic stop). Miller and Hope approached the Jeep,

---

[1] Hope had been a Pennsylvania State Police Trooper for nine years, and an Intelligence Officer for approximately two of those years. As an Intelligence Officer, Hope had criminal interdiction duties, which involved engaging motorists likely involved in criminal activity, including the trafficking of narcotics, guns, etc. Throughout the course of his career as an Intelligence Officer, Hope had been involved in approximately 70 stops that involved narcotics trafficking.

3

and Hope questioned Robinson further while Miller stood by the passenger-side window. Hope returned to his car to complete some paperwork, then returned to the Jeep and asked Robinson to accompany him to the rear of the Jeep, where Hope informed Robinson that he would receive a warning for speeding. Hope issued Robinson the warning, returned Robinson's documents, and informed him that he was free to leave.

As Robinson was walking back towards the Jeep, Hope called out to him, and asked him if he would be willing to answer more questions. Robinson returned to the rear of the Jeep to speak with Hope. While the two were conversing, Hope asked Robinson for permission to search the Jeep, which Robinson declined. Hope informed Robinson that he was aware of Robinson's criminal history, but Robinson denied having any prior arrests. Hope then allowed Robinson to look at the computer screen showing his criminal history, but Robinson continued to deny that he had ever been arrested. Hope asked Robinson to search the Jeep once more, and Robison again declined.

Hope did not allow Robinson to leave, but instead radioed the K-9 unit and requested that it come to the scene to perform an exterior sniff of Robinson's car. The K-9 unit arrived ten minutes later, approximately fifty-five minutes after the initial traffic stop. The dog sniffed the exterior of Robinson's car and signaled the presence of controlled substances. Robinson was placed under arrest, and the officers impounded the Jeep until they could obtain a search warrant. After obtaining the warrant, the officers located approximately 457 grams of heroin behind the Jeep's two front seats, and $1,030 cash.

4

A grand jury in the Middle District of Pennsylvania issued a one-count indictment charging Robinson with possession with intent to distribute 100 grams or more of heroin. Robinson filed a Motion to Suppress Evidence, and on March 15, 2011, the District Court conducted a hearing. In a written opinion, the District Court denied Robinson's Motion to Suppress, finding that the length and nature of the traffic stop did not result in an unconstitutional seizure, and that Hope had reasonable suspicion to warrant an investigative detention. Robinson subsequently entered a conditional guilty plea to the sole count of the indictment. He was later sentenced to 132 months' imprisonment. On appeal, Robinson contends that the District Court erred in failing to suppress evidence seized during a search incident to a traffic stop. [2]

## II.

Robinson does not contest the validity of the initial traffic stop. Instead, he argues that the stop was one continuous encounter, the length and nature of which was unreasonable and resulted in an unconstitutional seizure. [3] In the alternative, Robinson argues that if there were two separate stops, Hope had no reasonable suspicion to justify the second stop. In this case, it is unnecessary for us to determine whether there were two separate stops. As long as Hope had reasonable suspicion to justify expanding the

---

[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction over the case pursuant to 18 U.S.C. § 3231. We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

[3] The Government argues that the initial traffic stop ended when Hope returned Robinson's license and registration, and a voluntary encounter began when Robinson returned to the rear of the Jeep to answer Hope's additional questions.

scope of the initial traffic stop, it is irrelevant whether Robinson felt free to leave after his license and other documents were returned. *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (finding that an officer had reasonable suspicion to justify extending the scope of the original traffic stop, even after he returned the driver's documents and told him he was free to leave). Therefore, we will analyze Robinson's detainment as one stop.

After a valid traffic stop, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *Id.* at 458 (internal citations omitted). Whereas "reasonable suspicion" must be more than an "inchoate hunch," the officer is merely required to "articulate some minimal, objective justification for an investigatory stop." *Id.* (internal quotation marks omitted). To determine whether an officer had the basis for reasonable suspicion, a reviewing court must consider the totality of the circumstances surrounding the officer's investigation. *Id.* Under this test, great deference is given to an officer's knowledge of the "nature and the nuances" surrounding the type of criminal activity of which he was suspicious, and his prior experience regarding this criminal activity. *Id.* (citing *United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002)). While each factor cited by the officer may appear innocent when viewed in isolation, courts are not permitted to analyze factors individually, as innocent factors taken together may appear suspicious to an experienced officer. *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

A stop that was initially justified by reasonable suspicion may still violate the Fourth Amendment if it is unreasonable in scope or length. *Id.* at 18. There is no rigid time limit on the duration of the stop; the inquiry involves the nature of the officer's actions during his investigation. *United States v. Leal*, 235 Fed. App'x 937, 941 (citing *United States v. Sharpe*, 470 U.S. 675, 676 (1985)). Therefore, an officer must have "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 685.

In this case, the initial delay caused by the computer checks conducted by Hope was justified as part of his investigation of Robinson's speeding violation. *See U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010) ("[A]n officer may examine driver's licenses and vehicle registrations and run computer checks as part of his investigation of the circumstances that originally caused the stop."). Hope decided to radio for backup after discovering Robinson's criminal history. He was concerned for his own safety, and suspicious that Robinson might have been trafficking drugs. At this point, Hope had reasonable and articulable suspicion that Robinson was engaged in criminal activity, justifying the expansion of the scope of his investigation beyond Robinson's speeding violation. The factors contributing to Hope's suspicion were: 1) the prevalence of drug-trafficking along the Pennsylvania Turnpike; 2) the unusual manner in which Robinson stopped his Jeep; 3) a strong odor from the significant number of air fresheners in the Jeep; 4) multiple cell phones on the Jeep's center console; 5) discrepancies between the state in which Robinson's license was issued and the state in which the Jeep was

7

registered; 6) the Jeep's third-party ownership; 7) the unusual explanation of Robinson's travel plans; 8) Robinson's criminal history; and 9) Robinson's denial of his criminal history.

Taken together and in light of Hope's experience in narcotics interdiction, these circumstances provided Hope with a reasonable basis for expanding the scope of the initial traffic stop through additional questioning and the K-9 sniff. *See Givan*, 320 F.3d at 458 (finding that an officer had reasonable suspicion when he observed that an individual was speeding, operating a vehicle that belonged to a third party, had unusual travel plans, and was using a route often used for transporting drugs).

The question remains whether Hope "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly." *Sharpe*, 470 U.S. at 686. Hope's investigation began when he discovered Robinson had a criminal history, and decided to radio for backup. Although the checks he performed to investigate Robinson's criminal history took "longer than expected," the delay was caused by circumstances beyond Hope's control, not by his own unreasonable actions.[4] *See Leal*, 235 Fed. App'x at 942 (finding that an officer's investigation was reasonable despite an 80-minute delay, because he was diligent in his attempts to investigate his suspicions, but was frustrated by

---

[4] At the suppression hearing conducted by the District Court, Hope testified that the New Jersey criminal history report took longer than expected because Hope could not run Robinson's identification number from his car, and he was required to call dispatch in Harrisburg. Further, the dispatcher in Harrisburg had difficulty finding any record of Robinson's New Jersey criminal history, so Hope was required to radio PACIC (the Pennsylvania Intelligence Center in Harrisburg), EPIC (the El Paso Intelligence Center), and MANIX (another intelligence agency within the state of Pennsylvania).

circumstances beyond his control). For the same reasons, Hope was also justified in waiting twenty minutes for backup. Once backup arrived, Hope proceeded to conduct an investigation that was designed to quickly determine whether Robinson was involved in criminal activity: he briefly questioned Robinson about his travel plans, conducted a physical pat-down search, and called Robinson to the back of his car to answer additional questions about weapons—all actions designed to obtain information about criminal activity. Further, Hope called ahead to the K-9 unit, and requested it to stand by, ensuring that it would arrive quickly if needed. Shortly after it did, the dog alerted to the presence of controlled substances in the Jeep, confirming Hope's suspicions.

In light of the circumstances discussed above, Hope's investigation was reasonable in scope and length. Thus, we agree with the District Court's decision to deny Robinson's Motion to Suppress.

### III.

Accordingly, we will affirm the Order of the District Court.